STEPHEN W. BELINA *vs.* STANLEY PELCZARSKI
(and a companion case[1]).

Hampden.    December 27, 1955. — March 27, 1956.

Present: QUA, C.J., RONAN, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Negligence,* Gross, Motor vehicle.

A finding of gross negligence on the part of the operator of an automobile
was not warranted by evidence that he declined requests that he use
chains on a day when the roads were icy and slippery, that while
going downhill in the center of a narrow road toward a curve at the
foot of the hill where the view was obstructed the speed of the auto-
mobile increased to fifty to sixty miles an hour, that upon seeing a
motor truck proceeding in the opposite direction on the curve the
operator of the automobile applied his brakes, whereupon the auto-
mobile skidded into the truck with great force, and that just before
the collision he took his hands off the steering wheel and raised them
"to ward off the impact."

Two ACTIONS OF TORT. Writs in the Superior Court dated
December 17, 1949.

The actions were tried before *Leary,* J.

In this court the cases were submitted on briefs.

*Peter G. Ellis,* for the plaintiffs.

*Walter A. Aranow & Donald W. O'Neil,* for the defendant.

SPALDING, J. In these two actions of tort the jury re-

---

[1] The companion case is by Stanley Jarek against the same defendant.

turned verdicts for the plaintiffs, which were recorded under leave reserved. Thereafter the judge entered verdicts for the defendant. The cases come here on a consolidated bill of exceptions of the plaintiffs and the defendant. The plaintiffs excepted to the entry of verdicts for the defendant under leave reserved. The defendant excepted to the denial of his motions for directed verdicts presented at the close of the evidence and to the refusal of one of his requests for instructions.

The evidence most favorable to the plaintiffs was as follows: The plaintiffs and the defendant had made arrangements to go hunting and ice fishing on a lake in Orange. About eight o'clock in the morning of January 22, 1949, the defendant called for the plaintiffs in Chicopee Falls. Another group joined the expedition at Indian Orchard. It had snowed the day before and the condition of the roadways was "icy, slushy, and slippery." On arriving at Indian Orchard, the plaintiff Belina learned that the defendant had chains and requested him to put them on, but the defendant said that he did not think it was necessary. The two groups then left Indian Orchard for their destination. The defendant operated his automobile with Belina sitting beside him in the front seat and with the plaintiff Jarek sitting alone in the back seat. "The day was bright and clear and, as it progressed, grew colder."

Upon leaving Indian Orchard the defendant took the so called Ludlow Road, which is the main road between Ludlow and Belchertown. Normally this road was eighteen feet wide but by reason of snow and snow banks its width was reduced to approximately sixteen feet. The road "had a crown and was slippery and dangerous."

Approximately two miles before reaching the scene of the accident the defendant's automobile skidded. Again Belina "asked the defendant about using chains, and the defendant replied that he still didn't think that there was any need for them." Belina then requested the defendant to reduce the speed and the defendant did so.

As they approached the place where the accident occurred

the road went downhill. It was not an abrupt but rather
a "gradual slant" and the road curved to the right. The
view at the foot of the hill was obstructed. At this point
the road was "slippery and dangerous and the defendant
was operating his automobile down the center of the cleared
portion of the roadway." The defendant did this because
"it was too slippery to the right." As the defendant started
down the hill his speed, according to Belina, was thirty to
forty miles an hour and increased to fifty to sixty.[1] Belina
asked the defendant to "take it easy" but the defendant
made no reply. The defendant then observed a ten ton
truck coming from the opposite direction at a speed of ap-
proximately fifteen to twenty miles per hour. The truck
was travelling on its own side of the road, but the defendant
was still operating his automobile along the center of the
roadway. Upon seeing the truck, the defendant applied his
brakes. As he did so, his automobile was about to enter
the curve. When the brakes were applied, the automobile
started to skid and continued to skid "in a straight line"
until it collided with the truck which had "pulled to its own
right, off the highway." After his automobile started to
skid and shortly before the collision, the defendant "took
his hands off the steering wheel and lifted them shoulder
high to ward off the impact." The left side of the de-
fendant's automobile collided with the left front of the
truck. The accident occurred on the curved portion of the
road. The speed of the truck at the time of the collision was
approximately five miles per hour. According to Belina, the
speed of the defendant's automobile was fifty to sixty miles
per hour when it started to skid, and at the point of impact,
after skidding twenty-five feet, its speed was the same. As
a result of the collision the plaintiffs were injured, the de-
fendant's automobile was completely wrecked, and consid-
erable damage was done to the truck.

Inasmuch as the plaintiffs were guests of the defendant,
they could recover only on proof of gross negligence. We

[1] The plaintiff Jarek testified that the speed of the defendant's automobile
prior to the accident was thirty miles per hour, and another witness placed it
at thirty to thirty-five.

are of opinion that the evidence would not warrant a find-
ing of gross negligence. The line between gross negligence
and ordinary negligence is often difficult to draw. "It is
seldom that any one factor or any one precedent will be
wholly decisive. The matter is likely to remain largely one
of opinion in each case. Yet the distinction is well estab-
lished and must be observed, lest all negligence be grad-
ually absorbed into the classification of gross negligence."
*Quinlivan* v. *Taylor,* 298 Mass. 138, 140.

True, the defendant did not see fit to put on his chains,
although cautioned to do so. But on this record there is no
basis for inferring that the automobile was more likely to
skid without chains than with them. The speed, especially
in view of the icy conditions, might well have been found to
have been greater than was reasonable and proper (G. L.
[Ter. Ed.] c. 90, § 17) and a finding of negligence would
doubtless have been warranted. But we cannot say that
the defendant's conduct amounted to "that aggravated de-
gree of culpability necessary to make out proof of gross
negligence." *Lamb* v. *Russell,* 294 Mass. 203, 205. With
respect to the absence of chains, road conditions, and speed
the cases at bar resemble *Adamian* v. *Messerlian,* 292 Mass.
275.

Relying on such cases as *Bruce* v. *Johnson,* 277 Mass. 273,
and *Dinardi* v. *Herook,* 328 Mass. 572, the plaintiffs argue
that the defendant could have been found to be grossly
negligent by reason of having taken his hands off the steer-
ing wheel. But those cases are not controlling. In both
there was more than momentary inattention. In the cases
at bar the raising of hands by the defendant occurred just
before the collision and was hardly more than a reflex action
to ward off the impending impact. This aspect of the cases
at bar falls, we think, within the first group of cases dis-
cussed in the *Dinardi* case at page 574.

In view of our conclusion it becomes unnecessary to dis-
cuss the defendant's exceptions and they are dismissed.

*Plaintiffs' exceptions overruled.*
*Defendant's exceptions dismissed.*